UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAROME S. SMITH, # 431167,

                Petitioner,

v.                                    Case Number: 08-CV-12184
                                    Honorable Lawrence P. Zatkoff

JERI-ANN SHERRY,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

## I.  INTRODUCTION

       This is a habeas case filed by a state prisoner pursuant to 28 U.S.C. § 2254.  Michigan

prisoner Larome S. Smith ("Petitioner"), currently incarcerated at the Parnall Correctional

Facility[1] in Jackson, Michigan, filed this *pro se* Habeas Petition challenging his convictions

for assault with intent to murder, assault with intent to do great bodily harm less than murder,

and felony firearm, following a jury trial in the Wayne County Circuit Court in Detroit,

Michigan, on September 20, 2002.  On October 8, 2002, the trial judge sentenced him to

---

      [1]Petitioner was incarcerated at the Straits Correctional Facility when he originally filed his Habeas Petition; however, he has since been transferred to the Parnall Correctional Facility.  The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated.  Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006).  In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption.  However, because the Court is denying the Petition in this case, it finds no reason to do so.

concurrent terms of eleven to twenty-five and six to ten years in prison for the assault convictions and a consecutive two-year prison term for the felony-firearm conviction. For the reasons discussed below, the Court will deny the Petition. The Court also will decline to issue Petitioner a Certificate of Appealability.

## II. BACKGROUND FACTS

Petitioner's troubles in this case arise because of shooting incidents that occurred on July 30, 2001, and on August 17, 2001. Petitioner and co-defendant Kevelin Pippins were tried jointly before a single jury. Trial began on September 5, 2002, and concluded on September 20, 2002. Testimony revealed the following pertinent facts.

Rashid Lamar Brown, the complaining witness in this case, testified first. He knew Petitioner because he went to middle school with him. He identified him in court. Brown testified that, on July 30, 2001, the date of the first incident, he was driving around in a white Monte Carlo, with Lamarco Greenwood, Damion Boyd, and Boyd's two-month-old son. He drove into a gas station where he saw Petitioner. Brown was pumping gas and Petitioner was talking to some girls. Brown said Petitioner then drove away from the station. Petitioner was driving a blue Chevy Caprice.

Shortly after Brown left the station, he said Petitioner pulled up along side his car. Brown said there were two boys in the car with Petitioner. The guy in the passenger seat said something to them. Brown testified that he then drove to another gas station. Petitioner followed. Brown said he and Greenwood, and Petitioner and the two other guys, exited their cars and were about to fight but did not. He and Greenwood then got back into his car and

2

drove away.  He said he saw Petitioner drive back toward the other gas station.  Brown said

he then stopped and talked to some girls.

Brown further testified that, while he was talking to the girls, Petitioner suddenly

appeared "on top of me when they cut my car off."  Trial Tr. vol. III, 64 Sept. 10, 2002.  He

said Petitioner was driving and four others were in the car this time, including co-defendant

Pippins.  Pippins opened his door and started shooting, firing four or five shots.  Brown said

he put the car in reverse and attempted to flee the scene.  He said he was not injured.  Both

tires on the driver's side were flat and there were bullet holes in the driver's side door.  He

did not report the incident to the police because he had outstanding warrants.  Brown said

after that incident he started carrying a gun.

Brown further testified that a second shooting occurred on August 17, 2001.  He said

he was driving by himself when he saw Petitioner and Pippins following him.  Petitioner was

driving the blue Caprice and Pippins was following Petitioner, driving a black Caprice.  He

said he was armed at the time with a 9 millimeter handgun.

According to Brown, Pippins blocked his car, while Petitioner exited his car and shot

out his back window.  Brown said he heard a single shot and returned fire at Petitioner.  He

said Petitioner then dropped his gun and ran.  The next thing Brown remembered was waking

up in the hospital.  He had been shot in the head and shoulder.  He said there were no

incidents between him and Petitioner before July 30, 2001.  Brown said he did not know who

shot him.  He testified that no further incidents occurred after August 17, 2001.

James Howard testified next.  He was a witness to the August 17 incident.  He said

3

he was stopped at a light when a man got out of his car and starting shooting at another car. He testified that the shooter was in a car with another person driving and that they pulled up to the bumper of a white car so that the car could not move. He said both men fired at the white car and then drove away. Howard did not see anyone returning fire. He said he stopped and looked into the white car and saw what appeared to be a dead black male. He did not recognize the shooters.

Damion Boyd, Brown's friend, testified that, on July 30, 2001, he was driving around with Brown and Greenwood, and his infant son. He said they pulled into a gas station, and, when Brown went to pay for gas, Brown and Petitioner, whom he did not know, appeared to be having words. He said Petitioner was in a blue Chevy Caprice. Boyd testified that when they left the station, he saw the Caprice traveling in their direction. The Caprice pulled into another gas station, as did Brown. Brown and Greenwood got out of the car and they were loudly exchanging words with Petitioner and two others. Boyd said he asked them to come back to the car because he had his baby in the car. They did. They then drove away.

According to Boyd, as they were driving, the blue Caprice then pulled in front of them at an angle. He said he ducked down to cover his child. He heard three or four shots. He identified Petitioner as the shooter. He did not report the incident to the police.

Novolia Brown, Brown's mother, also testified. She said her son drove a white Monte Carlo. After July 30, 2001, she said she saw bullet holes in the windshield and saw that both tires on the driver's side were flat. She acknowledged that she knew Petitioner. She also testified that she and her son looked through photo books at the police station. When they

4

saw Petitioner's picture, she testified that her son said, "that's one of em."  Trial Tr. vol. V,

14 Sept. 16, 2002.

Eugene Fitzhugh, a Detroit police officer assigned to the evidence tech unit, testified

that he collected twenty shell casings and a cell phone from a vehicle at the scene.  He said

the casings were from two different automatic weapons, a 40 caliber and a 9 millimeter.

Greenwood's testimony corroborated that of Boyd's.  He said that the words

exchanged between Petitioner and Brown were expressions of mutual dislike.  Greenwood

testified that the second time he saw Petitioner's car, there were two more passengers in the

car.  He said he did not see anyone in the blue car fire shots.  He said Brown carried a gun.

Jadon Davis, another witness to the August 17 incident, testified that he was walking

along the overpass in the vicinity when he saw a white Monte Carlo, followed by two

Caprices, one black and one blue, on the service drive.  He said the Monte Carlo was stopped

at a stop sign and the black Caprice was directly behind the Monte Carlo.  He said he was not

sure who fired the first shot.  He saw someone get out of blue Caprice and go up along side

the Monte Carlo.  That person slipped and fell and then returned to the Caprice.  No one got

out of the Monte Carlo.

Detroit Police Officer Daniel Vickers testified that, when he arrived at the scene on

August 17, he approached the driver of the Monte Carlo, who appeared to be losing

consciousness.  He said that he removed a gun from his hand.  The parties stipulated that the

shell casings were fired from that gun.  Brown was the driver of the Monte Carlo.

Pamela Girton-Hart, another witness to the August 17 incident, testified that she was

5

driving in her minivan on the night in question.  She said she saw the Monte Carlo and heard several shots being fired but did not see the shooter.  She reported the incident to a police officer. She also testified that she witnessed the damage to the Monte Carlo and saw that someone had been shot.  She said she saw "[b]ullet holes everywhere, and the young man had been shot in the head."  Trial Tr. vol. VII, 14 Sept. 18, 2002.

After the prosecution rested, the defense called three witnesses, Kenneth Colbert, the investigator in charge of the case, and recalled two other witnesses, Brown and Brown's mother, Novolia.  Petitioner did not testify.

The jury convicted Petitioner as charged.

Following his sentencing, Petitioner filed a direct appeal with the Michigan Court of Appeals, raising the following three claims: (1) that the trial court should have *sua sponte* ordered a mistrial after a prospective juror expressed a "damaging" opinion regarding guns in the presence of the entire jury pool, (2) that he was denied the effective assistance of counsel because defense counsel failed to object to the prospective juror's comments and failed to move for a mistrial, and (3) that he was entitled to a mistrial, after the trial court concluded that the prosecution failed to produce an endorsed witness.  The Court of Appeals affirmed Petitioner's convictions and sentences.  *People v. Smith*, No. 246632, 2004 WL 1416264 (Mich.Ct.App. June 24, 2004).

Subsequently, Petitioner filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same three claims.  The Supreme Court denied his application. *People v. Smith*, 692 N.W.2d 386 (Mich. 2005) (Table).

6

On May 20, 2005, Petitioner filed a motion for relief from judgment with the state trial court, raising claims concerning the effectiveness of trial and appellate counsel, his sentencing, the jury instructions, insufficient evidence, and cumulative trial errors. The trial court denied the motion. *People v. Smith*, No. 02-003161 (Third Circuit Court Criminal Division, June 6, 2006). Petitioner's delayed application for leave to appeal, filed with the Court of Appeals, was denied on May 7, 2007, "because defendant has failed to meet the burden of establishing entitlement under MCR 6.508(D)." *People v. Smith*, No. 273648 (Mich.Ct.App. May 7, 2007). The Michigan Supreme Court also denied his application for leave for the same reason. *People v. Smith*, 737 N.W.2d 715 (Mich. 2007) (Table).

On May 19, 2008, Petitioner filed this Habeas Petition, raising the following nine claims: (1) trial counsel was ineffective for failing to present relevant and material alibi witnesses, (2) trial counsel was ineffective for failing to present his testimony, (3) the trial court erred in sentencing him, (4) trial counsel was ineffective for failing to protect his right to an unanimous verdict, (5) trial counsel was ineffective for failing to assert that the verdict was against the great weight of the evidence, (6) the cumulative effect of trial counsel's errors rendered the result unreliable, (7) trial counsel was ineffective for failing to object to a prospective juror's prejudicial comments, (8) the prosecution failed to locate a res gestae witness, and (9) appellate counsel was ineffective for failing to raise the above-stated issues on appeal.

### III.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review that a federal court

7

must utilize when reviewing habeas petitions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Federal courts are therefore bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). This Court must presume the correctness of a state court's factual determinations. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United

8

States Supreme Court held that a federal court should analyze a claim for habeas corpus relief

under the "unreasonable application" clause when "a state-court decision unreasonably

applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409.

The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should
> ask whether the state court's application of clearly established federal law was
> objectively unreasonable.

> [A]n unreasonable application of federal law is different from an incorrect
> application of federal law . . . .  Under § 2254(d)(1)'s "unreasonable
> application" clause, then, a federal habeas court may not issue the writ simply
> because that court concludes in its independent judgment that the relevant
> state-court decision applied clearly established federal law erroneously or
> incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 409-11.

Recently, in *Harrington v. Richter*, --- U.S. ---, 131 S.Ct. 770, 786 (2011) (citations

omitted), the United States Supreme Court held:

> A state court's determination that a claim lacks merit precludes federal
> habeas relief so long as "fairminded jurists could disagree" on the correctness
> of the state court's decision.  And as this Court has explained, "[E]valuating
> whether a rule application was unreasonable requires considering the rule's
> specificity.  The more general the rule, the more leeway courts have in
> reaching outcomes in case-by-case determinations."   "[I]t is not an
> unreasonable application of clearly established Federal law for a state court to
> decline to apply a specific legal rule that has not been squarely established by
> this Court."

With those standards in mind, the Court proceeds to address Petitioner's claims.

## IV.  DISCUSSION

**A.  Procedural Default–Counsel's Failure to Contemporaneously Object at Trial**

As a initial matter, the Court notes that Petitioner's jury-bias claim (claim VII) and res-gestae-witness claim (claim VIII) are procedurally defaulted because they were raised on direct review but were unpreserved for appeal by trial counsel's failure to contemporaneously object at trial.[2]  Contemporaneous objections were not lodged in the trial court, which would serve as an adequate state-law bar.  *See People v. Callon*, 662 N.W.2d 501, 513 (Mich.Ct.App. 2003).  The Michigan Court of Appeals reviewed these unpreserved claims for plain error and considered them to be without merit.

Under a long line of Supreme Court cases, an adequate and independent finding of procedural default by the state courts will also bar federal habeas review of a state conviction, unless the habeas petitioner can show cause for the procedural default and prejudice attributable thereto.  *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Harrington*, --- U.S. at ---, 131 S.Ct. at 787 (same).  The doctrine of procedural default is applicable where a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *See Brooks v. Tennessee*, 626 F.3d 878, 890 (6th Cir. 2010) (citation omitted).  The state may assert a procedural default when the last, reasoned opinion of the state courts clearly relies

[2]The underlying juror-bias claim was reviewed for plain error and is subject to procedural default because of Petitioner's failure to object at trial.  However, on direct review, Petitioner did claim that trial counsel was ineffective for failing to object.  That claim, now raised by Petitioner, is not subject to procedural default.

10

on a procedural bar in refusing to consider a claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If a petitioner is guilty of a procedural default in the state courts, the federal habeas court will only entertain the defaulted issue if petitioner bears the burden of showing cause and prejudice or can show actual innocence. *Murray*, 477 U.S. at 485.

In the present case, all of the prerequisites to a finding of procedural default are present. The Court of Appeals expressly found that Petitioner's challenge to the effectiveness of trial counsel, because of his failure to object to a prospective juror's comments and to the prosecution's failure to produce a res gestae witness, had not been preserved for review, because of counsel's failure to make a contemporaneous objection at trial. *Smith*, 2004 WL 1416264, at *3-5. The fact that the court went on to review the issue under a plain-error standard does not constitute a waiver of state procedural default rules. *See Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules."). Consequently, in the usual case, Petitioner would have the burden of showing cause and prejudice or actual innocence to overcome the default.

Both the Supreme Court and the Sixth Circuit have indicated, however, that the district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008). In the present case, Petitioner's

11

purported constitutional claims are indisputably meritless, so analysis of the complicated procedural default issue is unnecessary.

### 1. Claim VII--Ineffective Assistance of Counsel Claim Regarding Failure to Object to Prospective Juror's Comments

In his seventh habeas claim, Petitioner contends that trial counsel was ineffective for failing to move for a mistrial after a prospective juror indicated during *voir dire* that he had been stabbed and robbed fifteen years earlier and that the robber was never caught. When further questioned by the trial court, the juror expressed his opinion about guns, "I don't like guns, and I really do have an opinion about guns, that I just, I believe if you pull one out, I believe you have an intent to use it." Trial Tr. vol. I, 174-75 Sept. 9, 2002. Defense counsel then questioned the juror and moved to have him excused for cause, which the trial court granted. Petitioner now alleges that trial counsel was ineffective for failing to move for a new jury pool because the comment tainted the pool.

Claims of ineffective assistance of counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* In adjudicating the first prong of the standard, the Court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

Under *Strickland*, counsel is "strongly presumed to have rendered adequate assistance

12

and made all significant decisions in the exercise of reasonable professional judgment."
*Strickland*, 466 U.S. at 690.  The Sixth Amendment is violated only if counsel's acts or
omissions "were outside the wide range of professionally competent assistance."  *Id.*
Strategic choices after thorough investigation of law and facts relevant to plausible options
are "virtually unchallengeable."  *Id.*  To prevail on the second prong, Petitioner must
demonstrate a "reasonable probability" that the result of the trial would have been different
but for counsel's errors.  *Id.* at 694.

"The Supreme Court has repeatedly held, pre-AEDPA, that juror bias is a factual issue
and that reviewing courts must give the factual assessments of the trial judge a presumption
of correctness subject to the exceptions enumerated in 28 U.S.C. § 2254(d)."  *Franklin v.
Anderson*, 434 F.3d 412 (6th Cir. 2006) (citing *Thompson v. Keohane*, 516 U.S. 99, 111
(1995); *Wainwright v. Witt*, 469 U.S. 412, 431 (1985); *Patton v. Yount*, 467 U.S. 1025, 1036
(1984)).  "The exception relevant in this case is whether "the factual determination is not
fairly supported by the record . . . ."  *Id.* (citations omitted).

The Court of Appeals, in addressing, and rejecting, Petitioner's underlying juror-bias
claim, stated:

> We are not persuaded that the jury was exposed to extraneous facts.
> First, defendant has failed to provide any authority for his position that the
> prospective juror's comments about guns rise to the level of extraneous facts
> or evidence.  "A party may not merely state a position and then leave it to this
> Court to discover and rationalize the basis for the claim."  Further, although
> the jury heard the prospective juror's comments, it is unclear what, if any,
> negative effect the comments could have had on defendant Smith's case.  In
> this case, there was no issue regarding whether a perpetrator intended to shoot
> a gun.  In addition, the trial court instructed the jury to consider only the

13

> evidence properly admitted in court.  Juries are presumed to follow their instructions.  Moreover, in light of defendant Smith's failure to timely object to the prospective juror's comments, and his satisfaction with the composition of the jury, defendant Smith has failed to establish that the jury was prejudiced by the comments during voir dire. Accordingly, defendant has failed to establish plain error.

*Smith*, 2004 WL 1416264, at *4 (citations omitted).

Regarding Petitioner's ineffective-assistance-of-counsel claim involving this issue, the Court of Appeals stated:

> Because defendant Smith has failed to demonstrate that the prospective juror's comments were prejudicial, he cannot establish his claim of ineffective assistance of counsel.  In addition, the trial court's instructions, viewed in their entirety, adequately protected defendant Smith's rights.  Therefore, defendant Smith cannot demonstrate that there is a reasonable probability that, but for counsel's inaction, the result of the proceeding would have been different. Defendant Smith is not entitled to a new trial on this basis.

*Smith*, 2004 WL 1416264, at *5 (footnote omitted).

In his Habeas Petition, Petitioner argues that the juror's remark in front of the entire jury pool was unfairly prejudicial to him, especially in a case involving the use of firearms. However, the Court of Appeals noted that there was no dispute that the victim was intentionally shot.  The defense's theory was that the victim brought it on himself, that the victim shot at Petitioner and his friends without realizing they were armed, and that they returned fire.  Petitioner now argues that he was not even present and provides affidavits from supposed alibi witnesses.  Under either theory, the prospective juror's opinion that drawing a firearm signifies an intent to use it had no real bearing on the factual disputes to be resolved.

14

Petitioner also asserts that the jury pool was exposed to extraneous information concerning the dismissed juror's view of the evidence.  As the Court of Appeals noted, however, the prospective juror did not comment on any evidence or suggest extraneous evidence.   Rather, the prospective juror expressed his own opinion about firearms. Furthermore, the prospective juror was dismissed for cause.

The Court finds that the record reflects that counsel was actively involved in voir dire and aware of potential problems with this prospective juror.  The presumption is that counsel acted within the wide range of reasonable professional assistance and made significant decisions in the exercise of reasonable professional judgment.  *Strickland*, 466 U.S. at 690. Counsel may have believed that questioning and dismissing the prospective juror for cause underscored the importance of impartiality for other members of the jury pool.  He also may have believed that at least one of the seated jurors would be favorable to the defense.

Petitioner fails to offer anything to rebut the presumption of reasonable trial strategy. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 2. Claim VIII–Prosecution's Failure to Locate a Res Gestae Witness

In his eighth habeas claim, Petitioner argues that his due process rights were violated when the prosecution failed to secure the presence of a res gestae witness, Shanae Williams, an endorsed witness by the prosecution.

In Michigan, the prosecution is not required to produce res gestae witnesses at trial; however, if the prosecutor fails to call a listed witness and has failed to delete that witness from its witness list, it may nonetheless be appropriate for the trial court to instruct the jury

15

that it could draw an adverse inference from the prosecutor's failure to call the witness that the witness's testimony would have been harmful to the State's case. *People v. Cook*, 702 N.W.2d 613, 616 (Mich.Ct.App. 2005), *appeal denied*, 706 N.W.2d 200 (Mich. 2005).

First, this claim, that the prosecution failed to produce a res gestae witness, concerns a perceived error of state law. *See Smith v. Elo*, 198 F.3d 247 (Table), 1999 WL 1045877 (6th Cir. 1999). It is well established that "'federal habeas corpus review does not lie for errors of state law,'" unless the error denies a petitioner fundamental fairness in the trial process. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Second, federal law does not require the production of res gestae witnesses. "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, at * 2 ( 6th Cir. 1988), *cert. denied*, 488 U.S. 1046 (1989) (citing *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972)). The Sixth Circuit has held that Michigan's res gestae requirement is a state-law question and not cognizable in federal habeas review. *Lewis v. Jabe*, 891 F.2d 291 (Table), 1989 WL 145895 (6th Cir. 1989).

Third, the trial court found that the prosecution did not exercise due diligence and indicated that it would give the adverse witness instruction. The Michigan Court of Appeals in addressing, and rejecting, this claim found that the trial court properly instructed the jury and therefore cured any prejudice to Petitioner. *Smith*, 2004 WL 1416264, at *6. The Court

16

of Appeals stated:

> If the prosecution endorses a witness, it is generally obliged to exercise due diligence to produce the witness at trial. If the trial court concludes that the prosecution failed to exercise due diligence, the court should instruct the jury, in accordance with CJI2d 5.12, that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case.
>
> In its final instructions, the trial court instructed the jury in accordance with CJI2d 5.12:
>
>> Shanae Williams, [sic] is a missing witness, whose appearance was the responsibility of the prosecution.
>>
>> You may infer that this witness's testimony would have been unfavorable to the prosecution's case.
>
> The court's instructions cured any prejudice to defendant Smith and adequately protected his rights. Moreover, because defense counsel acquiesced in the trial court's handling of the matter, any challenge in this regard was waived. Consequently, reversal of defendant Smith's convictions is not warranted on this basis.

*Smith*, 2004 WL 1416264, at *5-6 (citations omitted).

This Court agrees with the Court of Appeals's decision, finding that Petitioner was not denied fundamental fairness in the trial process. Accordingly, the Court concludes that Petitioner is not entitled to habeas relief with respect to this claim.

To the extent Petitioner alleges that his Confrontation Clause rights were violated, he also is not entitled to habeas relief. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). In this case, there is no

17

basis for believing that the missing witness would have exculpated Petitioner.  Additionally, at the due-diligence hearing, when the trial court indicated that it would give the adverse witness instruction because it found that the prosecution did not exercise due diligence, the defense did not object.  Against that backdrop, the Court concludes that Petitioner was not denied his right of confrontation.

### B.  Petitioner's Remaining Claims

Respondent argues that Petitioner's remaining claims are procedurally defaulted. However,  it does not appear from the record that Petitioner's remaining  habeas claims (claims I, II, III, IV, V, VI, and IX) were procedurally defaulted in the state courts.  Petitioner did not assert on direct appeal those claims asserted in his Habeas Petition.  Rather, he raised those claims in a post-conviction motion for relief from judgment under Michigan Court Rule 6.500.  The trial court's order denying post-conviction relief, while brief, went to the merits of Petitioner's claims.  The Michigan Court of Appeals and Supreme Court each denied leave to appeal, citing Michigan Court Rule 6.508(D).  Where the state appellate courts' orders are brief and cite Rule 6.508(D), this Court must look to the last-reasoned, state-court opinion to determine the basis for rejecting Petiitioner's claims.  *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

The last-reasoned opinion is the trial court's June 6, 2006 opinion, which rejected Petitioner's claims on the merits.  The doctrine of procedural default bars review only if the state courts actually applied a procedural bar to reviewing Petitioner's claims.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  As the state court did not apply the procedural bar,

18

but rather went on to review Petitioner's claims on the merits, the doctrine of procedural default does not apply.

### 1.  Ineffective Assistance of Trial Counsel

In his first, second, fourth, fifth, and sixth habeas claims, Petitioner asserts that his trial counsel was constitutionally ineffective for the following reasons: for failing to present relevant and material alibi witnesses, for failing to present his testimony, for failing to protect his right to an unanimous verdict, and for failing to assert that the verdict was against the great weight of the evidence.  Petitioner also alleges that the cumulative effective of trial counsel's errors rendered his result unreliable.

The trial court addressed the claims of ineffective assistance of counsel as follows:

> The defendant does not present actual evidence of misconduct on the part of his attorneys; what he would like to construe as ineffective assistance on their part (which witnesses to present, which questions to ask) is properly considered trial strategy and appellate tactics. His attorneys investigated many witnesses and raised many key issues, and the court simply did not find those arguments persuasive.  Strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and should not be the basis for a new trial.  Having examined defendant's brief and reviewed the record, there is no indication that counsel was ineffective.

*Smith*, No. 02-003161, at *2 (citations omitted).

Although the trial court's order did not explicitly reach each of the claims of counsel's effectiveness, nonetheless, this Court must presume that Petitioner's claims of ineffective assistance were rejected on the merits.  *See Harrington*, --- U.S. ---, 131 S.Ct. 770, 784 (2011) (state court decision unaccompanied by statement of reasons constitutes decision on the merits for purposes of 28 U.S.C. § 2254(d)).  Thus, the question before the Court is

19

whether the holding of the Michigan court that Petitioner's trial counsel was not constitutionally ineffective was an unreasonable application of clearly established law as set forth by the holdings of the United States Supreme Court. *Id.*

Upon review of the entire record, and as discussed immediately below, there is no support for Petitioner's assertion that his trial counsel was constitutionally ineffective for failing to raise these claims, and therefore the holding of the Michigan court was not an unreasonable application of clearly established federal law.

### a. Failure to Call Alibi Witnesses

Petitioner claims trial counsel was ineffective for failing to call Jennifer Teague, Charles King, and Kelvin Grier as alibi witnesses at trial. In support, Petitioner attaches three strikingly similar affidavits in which all three affiants indicate Petitioner was in his backyard near the crime scene working on his girlfriend's car.

Petitioner acknowledges that trial counsel contacted all three witnesses and placed their names on a proposed witness list. Furthermore, all three affiants admit that they spoke with counsel and relayed the substance of their knowledge to counsel. Here, Petitioner is not claiming failure to investigate, but rather, challenging counsel's decision not to call these witnesses. The Supreme Court held in *Strickland*, however, that strategic decisions made after a thorough investigation are virtually unchallengeable. *Strickland*, 466 U.S. at 691.

In this case, Petitioner informed counsel of the three potential witnesses, counsel contacted all three, and all three indicate in their affidavits that they relayed the substance of their potential testimony to counsel. While this claim was raised for the first time on

20

post-conviction review and there was no evidentiary hearing on counsel's decision, the record suggests counsel simply rejected an alibi defense given the evidence of Petitioner's involvement, which included eye-witnesses and identification by the victim. Moreover, after speaking with the proposed alibi witnesses, counsel may have found their version of events internally inconsistent or without credibility. In essence, Petitioner is not challenging an alleged error, but rather, proposing an alternate theory of defense. Against that backdrop, the Court concludes that trial counsel was not ineffective with respect to this issue.

### b.  Depriving Petitioner of Right to Testify

Petitioner also claims counsel was ineffective for failing to call him as a witness at trial. Specifically, he argues that, prior to trial, he discussed the possibility of his testifying with defense counsel. The proposed testimony consisted of his acquaintance with Brown. He alleges that he would have acknowledged that Brown shot one of his friend's years before these incidents. He also alleges that he would have denied any knowledge or participation in the July incident and would have provided his whereabouts at the time of the August incident.

However, after further discussion and consultation, defense counsel reasoned that the context of Petitioner's testimony could have provided a motive that was otherwise unavailable to the prosecution. Apparently, counsel was concerned with the jury interpreting the present shooting as being motivated by the prior shooting. Petitioner at the time accepted counsel's reasoning.

Petitioner acknowledges that he was in agreement with counsel's strategy at the time.

21

He now argues that the prior shooting that concerned defense counsel was only marginally relevant and too remote in time to sufficiently override his interest in providing the jury with his version of events.  However, the Court finds that counsel's decision is the essence of trial strategy, made after a thorough investigation and thus unchallengeable.

Petitioner further argues that the prior shooting was elicited anyway, thereby eliminating counsel's concern regarding calling him as a witness.  The Court finds that counsel may well have had other reasons for refraining from calling Petitioner.  Having met with and discussed the case with his client, counsel was in the best position to determine how strong a witness he would be and the risk of damaging cross examination by the prosecution.  The Court therefore concludes that trial counsel was not ineffective with respect to this issue.

### c.  Failure to Correct Jury Instructions

Petitioner also claims trial counsel was ineffective for failing to object to an instructional error.  Specifically, Petitioner argues that counsel failed to protect his right to a unanimous jury verdict because it was alleged that he shot at the victim on two separate occasions but the jury instructions did not specify which occasion would serve as the basis for charging him with felony firearm.

"[A]s a general rule, errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings.  They are not constitutional errors unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law."  *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981) (citations omitted).  To warrant habeas relief, a petitioner must show that the instructions, as a whole, were so infirm

as to render the entire trial fundamentally unfair. *Estelle*, 502 U.S. at 72. The Supreme Court described this exceptionally difficult standard in *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (citations omitted), noting that even "universally condemned" instructions alone are insufficient to warrant habeas relief.

Moreover, there is no requirement that jurors unanimously agree on the preliminary factual issues underlying their verdict. *Schad v. Arizona*, 501 U.S. 624, 632 (1991). In fact, there is no federal constitutional right to a unanimous verdict in a criminal case. *Apodaca v. Oregon*, 406 U.S. 404, 406 (1972). Petitioner's unanimous-verdict claim is based on a state constitutional right, not a federal constitutional right. Simply put, this claim is not cognizable.

Furthermore, Petitioner was not accused of shooting at the victim on both occasions. Rather, he was accused of driving the vehicle that co-defendant Pippins fired from during the July incident, and shooting at the victim during the August incident. Thus, as the trial court explained in its denial of Petitioner's post-conviction motion, "the jury did not need to specify which incident it used as a basis for the charge since there was only one incident that *could* support the conviction." *Smith*, No. 02-003161, at *2 (emphasis in the original). Counsel was not ineffective regarding this claim.

### d. Failure to Assert the Verdict Was Against the Great Weight of the Evidence

In his fifth habeas claim, Petitioner asserts that the verdict was against the great weight of the evidence because the witnesses were unreliable and that counsel was ineffective for failing to raise the issue.

23

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *See Cukaj v. Warren*, 305 F.Supp.2d 789, 796 (E.D. Mich. 2004) (citing *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985); *Crenshaw v. Renico*, 261 F.Supp.2d 826, 834 (E.D. Mich. 2003); *Dell v. Straub*, 194 F.Supp.2d 629, 648 (E.D. Mich. 2002)); *see also Artis v. Collins*, 14 F.App'x. 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).

Moreover, "attacks on witness credibility are simply challenges to the quality of the [prosecution's] evidence and not to the sufficiency of the evidence." *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (citation omitted). An "assessment of the credibility of witnesses is generally beyond the scope of [federal habeas] review" of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000) (quoting *Schlup v. Delo*, 513 U.S. 298, 330 (1995)). Any insufficiency-of-evidence claim rests on an allegation of the victim's credibility, which is the province of the finder of fact.

The trial court found that Petitioner was not prejudiced by his attorney. Rather, the trial court found that Petitioner "was prejudiced by his own lack of credibility; the jury found both the victim and the prosecution witnesses more credible that the defendant." *Smith*, No. 02-003161, at *2.

With that, the Court finds that trial counsel was not ineffective for failing to raise this futile claim. Petitioner is therefore not entitled to habeas relief with respect to this claim.

**e. Cumulative Error**

Petitioner argues that the cumulated errors of his trial counsel justify habeas relief. In this circuit, claims of cumulated trial errors are not cognizable under § 2254. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Thus, this argument does not merit further discussion.

## 2. Sentencing Claim

In his third claim, Petitioner alleges that the trial court enhanced his sentence on the basis of facts which he did not admit and which were not proved to a jury beyond a reasonable doubt. This claim is based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and on *Blakely v. Washington*, 542 U.S. 296 (2004). In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Supreme Court stated that the "statutory maximum" for purposes of *Apprendi* "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted).

Both the Michigan Supreme Court and the Sixth Circuit have determined that *Blakely* does not apply to Michigan's indeterminate sentencing scheme. *See Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *People v. Drohan*, 715 N.W.2d 778, 791 (Mich. 2006). This Court is bound by the Sixth Circuit's decision in *Montes*. Petitioner therefore has no right to relief on the basis of his *Blakely/Apprendi* claim.

## 3. Ineffective-Assistance-Of-Appellate-Counsel Claim

25

In his ninth and final habeas claim, Petitioner asserts that appellate counsel was ineffective for failing to raise the above claims in his direct appeal.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). It stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy []. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754 (footnote omitted). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59-60 (6th Cir. 1990) (citing *Jones*, 463 U.S. at 751).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims he raised on collateral review and in his Habeas Petition. Petitioner has failed to show that any of these claims were potentially meritorious. Moreover, the Michigan trial court rejected Petitioner's claim of ineffective assistance of appellate counsel in deciding his post-conviction motion. *See* Opinion Dated June 6, 2006. That determination was not an unreasonable application of United States Supreme Court precedent. As discussed above, Petitioner's habeas claims lack merit. *See Jones*, 463 U.S. at 751-52 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Therefore, the Court concludes that Petitioner's appellate counsel was not

26

ineffective for failing to raise them on direct review.

### C.  Court Declines to Issue Petitioner a Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a [COA] when it enters a final order adverse to the applicant . . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11, Rules Governing Section 2255 Proceedings.

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Courts must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue.  28 U.S.C. § 2253(c)(3); Fed.R.App. P. 22(b).  To receive a COA "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).

For the reasons stated in its Opinion and Order, the Court concludes that reasonable jurists would not find its assessment of Petitioner's claims debatable or wrong.  The Court therefore declines to issue Petitioner a COA.

27

## V.  CONCLUSION

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [dkt.

# 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue Petitioner a COA.

s/Lawrence P. Zatkoff\
LAWRENCE P. ZATKOFF\
UNITED STATES DISTRICT JUDGE

Dated:  August 8, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 8, 2011.

s/Marie E. Verlinde\
Case Manager\
(810) 984-3290

28